The first case is Nauset Construction Corporation v. Secretary of the Army, 21-2305. Mr. McNamara, and I see that you have not reserved any time for rebuttal, correct? That is correct. Okay, we're ready when you are, sir. May it please the court. My name is John McNamara. I am counsel at which for your honor's reference is about 25 miles due west of Boston. I am counsel for the Appellant Nauset Construction Corporation, also of Massachusetts. Your honors, this appeal involves a project known as the Unit Training Equipment Site, or what we have called UTES Project in Bourne, Massachusetts, which is right at the doorway to Cape Cod. The UTES Project was owned by the Army National Guard and Nauset was the general contractor pursuant to a solicitation in 2012. On appeal, your honors, is whether the termination of Nauset was defective and or deficient because the government did not properly advise Nauset of its appellate rights as required by the FAR. In light of the defective termination, whether Nauset's appeal of that termination to the Armed Services Board of Contract Appeals was timely. Before we get to an argument concerning the adequacy of a termination notice, and that's where you're headed, correct? Yes. Is it necessary that we first consider whether the contractor was prejudiced? Your honor, that is part of the calculus. Absolutely. It's a separate distinct calculus, isn't it? I believe it's part of the Decker analysis of whether the termination was facially defective and whether the contractor was prejudiced as a result of those defects. And for reasons that we have set forth in our papers, we argue that Nauset was in fact prejudiced by the defective termination notice in light of prior facts before the termination and the government's counsel post-termination. Can I just ask, I guess sort of as a threshold matter, here the only defect identified is a regulatory one. The cases like Decker, I think, were all statutory defects. Does that distinction matter at all? I believe Decker and Pathman, your honor, were under 33.211 of the FAR in section 605 of the CDA regarding what rights must be provided to the contractor in cases of a final contract decision, final contractor's decision. So I believe Decker and Pathman both arose under the FAR section 33.211. Thank you, your honor. And on the question of, I guess, Decker talks about detrimental reliance. Isn't it something like normal for a concept of reasonableness to be built into a detrimental reliance standard so that it wouldn't be enough to say, I relied on this, I would have filed earlier had I known, if that wouldn't be enough, if that reliance was unreasonable? Yes, the reliance would have to be reasonable, your honor. Absolutely. So why shouldn't we understand the board decision in substance to say, with a lawyer on hand and, in fact, doing research as indicated, I assume, by billing records or something, any confusion just was not reasonable? Well, your honor, the board found that NAWCET was confused regarding its appellate rights, although it says it doesn't understand the genesis of that confusion. So I think there's been a confusion as to NAWCET as to what it could and could not do in light of this termination. And yes, I was involved. Even with that, even with a finding of confusion, going back to the question just asked by Judge Toronto, isn't there have to be a determination of whether that, whether it was reasonable to be confused? Yes, of course, your honor. And the facts of the case establish, and I believe the board below established that there was an element of reasonableness related to NAWCET's confusion in light of what had transpired immediately before and immediately after the termination. But you're not contending that the board found that the board did not go that far, your honor? Absolutely. But the facts of the termination, immediately prior to the termination, and actually for months prior to the termination, I was in communication with the government regarding establishing a meeting to talk about the pending claims and the completion of the project. The meeting had been established for November 28, 2017, through a discussion I had with counsel for the government, Mr. Goodwin. That meeting was confirmed on November 7, 2017. But just to be clear, the board found that there was confusion, but that that confusion was unreasonable. You know, your honor, I don't know if the board found it was unreasonable. I think the board, based upon my involvement on behalf of NAWCET at that time and prior to that time, said that NAWCET should not have relied upon the facts that were taking place. I was representing NAWCET. NAWCET did have counsel. There's no question about that. And in light of the fact that once the contract was terminated, there was immediate discussion of transmitting or transferring this to a T4C, termination for final decision in January of 2017, which was acknowledged by the contracting officer. NAWCET sent a claim for termination cost and a request for final decision in February 12, 2018, not 2017, to which the contracting officer replied, the request or the decision will be made on this May 1, 2018. The record indicates that there was, that perhaps you were led on or your client was led on in this process as to whether a reconsideration was going to take place or when to expect that. And I understand that. What I don't understand is why there was no push on your part. Why there was no push on your part? Why was there no demand, a more clear, well-stated, concrete demand that there be a similar type of concrete response from the government? Well, Your Honor, I would assert that pursuant to NAWCET's two requests for a final decision, there was a demand and a push. For example, in the February 12 one, there is a February 12, 2018, there's a section toward the end where NAWCET requests a final decision from the contracting officer on the termination claim. NAWCET made two requests for a final decision in this regard. And also, in following the policy of the Contract Disputes Act, NAWCET requested alternative dispute resolution. NAWCET did not want to be engaged in a lengthy litigation with the government, was requesting a final decision from the contracting officer and simultaneously, Your Honor, requesting alternative dispute resolution. There was no response other than, I will make a decision by July 1, 2018, to that request for final decision. Can you just clarify something? I'm not looking at it right now, but was the request for final decision, where I think you said there were two of them, specifically about the termination for default or about the requests, claim one and claim two, for a certain amount of money that you thought you were owed? For both, Your Honor. For the request for compensation and the termination for default. And the second one was February 12, 2018. The first one was January 17, 2018. On two occasions, NAWCET requested the contracting with the CDA. We requested ADR. There was no response to that. After the contracting officer indicated that she would issue a final decision on July 1, 2018, a meeting was arranged at the National Guard headquarters in Bedford, Massachusetts. And rescission of the termination was discussed at that time. NAWCET surety was present at that meeting, as was Counsel for the Guard, as was myself. But the meeting minutes reflect there was a further request for the rescission of the termination. Approximately one month later, Counsel for the National Guard wrote to myself, as well as Counsel to the surety, and stated, at this time, the government is not willing to rescind its termination. There's even a question at that point whether that's finality, because the Guard's counsel said, at this time, we will not rescind the termination. And it was only until June of 2018 where the contracting officer finally stated that she would not issue a final decision based upon a suspicion of fraud. At that point, on behalf of NAWCET, I filed an appeal with the Armed Services Board of Contract Appeals in the end of June 2018, appealing claim number one, which had been submitted many months prior, the subcontractor claim, which is known as Griffin Electric, and claim number two, which sought compensation for and wrongful termination of the contract, which NAWCET had submitted on February 12, 2018. Can we consider conduct that took place outside of the 90-day window? Your Honor, the board below said that conduct was irrelevant. I think it's relevant for the following reasons. The second request for final decision was submitted on February 12, 2018, which was within the 90-day window, and it's very detailed. Three days before, right? Three days before, Your Honor, and it's very detailed, and it asserts all of the allegations and requests a final decision. After that, it wasn't until March, I believe, of 2018, where the contracting officer said, I will issue a final decision on July 1, 2018. I think that's relevant, Your Honor. I think the May letter of 2018 is also relevant for Your Honor's consideration, where for the first time in writing, the guard through counsel says, at this time, we are not willing to rescind the termination. So, I believe they are, Your Honor. Counsel, the board did cite some of its own case law precedent for the proposition that there is a bright line rule that things that happen after the notice of appeal date would not be relevant. Were you able to find any cases from our court, for example? I was not able to, but were you able to find any cases from our court or any other court that would support that kind of bright line rule? I did not, Your Honor. Okay. However, in light of the facts of this case, where the termination did not say it was final, the termination did not advise Nauset that if it intended to appeal to the board, that it had to do so within 90 days. That the termination did not say if Nauset intended to forego appeal and go to the claims court, that it had to within one year. Just to be clear, the November, was it 2017? November 17, 2017. You have appeal rights. Look at the disputes clause, right? Yes. Did the disputes clause that it referred to provide the details of timing and form? Well, that's an interesting question, Your Honor. In the termination is that appendix 349, and it says this notice constitutes a decision that the contractor is in default, as specified, in that the contractor has the right to appeal under the disputes clause. Now, the FAR referenced in the contract at that point is an outdated FAR, and it is unavailable unless you did very deep digging on Westlaw. That FAR had been replaced, I believe, on two occasions at that point. So, I would argue that this is... Just to be clear, but you're the contracting party, so these are incorporated by reference provisions. Aren't you obligated to know what the term of the contract was? The law is the contractor is charged with knowing the law. Absolutely. And that clause, 52-233-101 from 2002, does specify 90 days and board? I believe it does, Your Honor. Not readily available when you're searching for that clause. Your Honors, I see my time has expired. I thank you for your time and attention. On behalf of NAWCET Construction, based upon these facts in the extant case law, we request that the decision of the Armed Services Board of Appeal regarding the appeal as to dismissal of the termination claim be reversed. Thank you. Counselor Grimaldi, did I get that correct? Grimaldi, Your Honor. Thank you, Your Honors. Good morning. It's good to be back. In person. In person, yes. Your Honors, before I get into the issues in this matter that you've discussed with my colleague on the other side, I just want to set the stage a little bit here about what's not in dispute between the parties. There's no dispute. Before you get to that, I just want to confirm something. So we have a board decision in front of us is non-final as to the two compensation claims, but is final as to the termination for default, and yet you think we have jurisdiction? Yes, Your Honor. The Orlando helicopter case. Separate, so. Yeah. The challenge to the default termination is separate and distinct from the monetary claims, from the subcontractor, and from NAWCET on its performance during the time period. It's not just that they're distinct claims. It kind of has to be a distinct case, right? Ordinarily, you would have distinct claims in district court, but if some remain, you still have to wait. It wouldn't be a final decision. Correct. And that's settled. Correct, yes. We've spent a good amount of time analyzing this and came to the conclusion that we believe that there is jurisdiction for the termination of default here, Your Honors. So, Your Honors, what isn't in dispute between the parties is that the contract was terminated for default, that a notice was sent to NAWCET in November 2017, that that notice is technically defective. It does not contain the FAR Part 33 language. Only contains the FAR Part 49 language about the disputes clause. They made it defective, correct? Yeah, we would call it technically defective, Your Honor. I'd add that adjective there. And then what is also not in dispute is that NAWCET did contemporaneous research on appealing a termination for default to the ASBCA at the same time, around the same time period. Can you add to this, like, what would a person do in order to take the notice that was provided and figure out what the appeal rights were? Do you want me to walk you through the steps? What are the cookie crumbs? Sure, sure. As the Jayway case said, is the breadcrumbs, Your Honor. So the breadcrumbs start with the notice itself and the FAR Part 49 language, which says that there's an appeal right under the disputes clause. Following that, you go to the disputes clause of the contract, which appears on appendix page 240, and that says that's the incorporation of the clause. So just list what the clause is, then you have to go to the FAR. Correct. Okay. And we pointed out in our brief that while this is an old disputes clause that appeared in the contract, it is a contract that NAWCET signed. And as Your Honor points out, under this court's case law, Turner, they're charged with understanding the contents of their contract and the applicable law. So if they look up this clause, it refers to the Contract Disputes Act, and then the Contract Disputes Act gives the 90-day deadline for the ASPCA. If they looked up the clause online and obtained the current version, does the current version provide the notification of form and timing? I don't recall that, Your Honor, actually. I've been focusing on the old version. And I think you, I don't remember, did you Well, I just did two days ago, just to double check, Your Honor. And I went on to Westlaw. They have historical Code of Federal Regulations. And I searched for the number of the clause, so the 52-dot number, in quotes, and I got it. And it was right there, Your Honor. And in terms of the fact, the argument that the CDA numbers have changed, when I was writing the brief, I entered the old CDA numbers into Westlaw, and the new version popped up. So, you know, as Jayway says, you can follow the breadcrumbs here. And that's how you would wind up finding the 90-day deadline, Your Honor. So what is in dispute between the parties is whether or not that following of the breadcrumbs, if you will, is considered to be an adequate notice of appeal rights. And alternatively, if it is inadequate, whether NAWCET was prejudiced by the inadequate notice. And Your Honor, just quickly on the adequacy of the notice of the rights, we do believe that following the path that I just spoke about, and combined with this Court's case law, like Turner, that says that contractors need to be aware of not only the law, but the contents of their contracts, that this notice is, in fact, adequate. Just like Jayway, the First Circuit in Jayway found the notice that was nearly identical in that case to be adequate. So we would ask this Court to affirm on alternative grounds finding the notice to be adequate. Adequate in what regard? Adequately stated or adequately given notice as to the appeal process? I'm not sure there's much of a difference in my mind between those two options, Your Honor. So maybe I'll just try to affirmatively state it. It's adequately, it provides adequate notice of appeal rights to NAWCET. That's how the government would state it. And that is what the... And is there a statutory adequacy of notice of appeal rights provision? It's termed adequate. I want to ground it in some actual source of law. Right, Your Honor. I assume we're not talking about constitutional due process, but maybe we are. I don't know. Right. Your Honor, there has to be... We're not talking about, I think, a statute. The Contract Disputes Act doesn't say these are the words that have to be included. Right. So we quoted, I guess, 605A in whatever the middle case was, Decker. And that has something about give notice. Is there a current statutory version of 605A which seems to have been distributed across a number of different provisions? So the 90 days appears in 7104A and this is the 90 day deadline to actually provide the... This is what has to be read. Let's put it that way by the contractor. What the problem with this actual termination for default letter is missing the language in FAR 33-211A, Roman numeral 5. And I'm not going to read this whole thing to Your Honor because it's two paragraphs here, but it says paragraphs substantially as follows. And the government concedes that... I mean, there can be some debate about what is substantial if words are missing from these paragraphs, but these paragraphs were not included. We will concede that. But what we are arguing, which is separate apart from our prejudice argument, I want to be clear about that. I just want to get back to this. So Decker quotes 605A, the old cognition, saying that the CO's final decision, quote, shall inform the contractor of his rights. Okay. Is there a current version of that? I have that, Your Honor. It's 41 USC 7103 letter E and it says shall inform the contractor of the contractor's rights as provided in this document. So, Your Honor, I see the time's ticking away, so I feel like I should move on from the adequacy argument and talk a little bit about prejudice here. And in some of the conversations we were having with my colleague here, we're asking, should there be a reasonable reliance? Now, Decker says detrimental reliance many times, about seven times or so within it. So it's a Mr. McNamara, I think, agreed that any such reliance has to be reasonable. And what NOSET is asking for, Your Honor, is for this court to, despite the fact that the board found the reliance was not reasonable based on the facts of that case, it looked at not only the declarations, the affidavits of the NOSET employees, but also the actions of counsel and determined that there was conflict between them and that it was hard to believe that NOSET was unaware of its appeal date. What NOSET is asking this court to do is revisit those facts, reweigh them, and say despite this research that counsel has done and despite their involvement in those facts, the weight of authority, the weight of the facts should be given to the affidavits. And this court should find opposite of what the board has found on the facts. And because this is a factual question, it's reviewed for substantial evidence, right? It's arbitrary and capricious. Yeah. So this court, as Copper says, it's a heavy burden. And what this court can do here is review this to see if it's arbitrary and capricious, but it cannot substitute its own judgment. How do you reconcile or put together in a coherent way the statement that we actually think NOSET was confused? We're a little puzzled about why they were confused, but they were. Those sort of sound like subjective detrimental reliance to me. But again, we're not talking about subjective detrimental reliance. I mean, there is an element of subjectivity to detrimental reliance, but there also must be an element of objectivity. And that's where the board's decision is on the objectivity part. And if I could walk your honors through the decision... Would you say that's analogous to the reasonableness, that it has to be reasonable? Yes, that's... I would use them interchangeably. You could use those words. Yeah, yes, yes. The board found that to the extent NOSET employees did not understand their appeal rights, that was not reasonable. And that was based on the facts findings surrounding counsel's involvement. And the confusion language, your honor, starts on appendix page 14, if I'm looking at this right. And at the bottom of that page, the very last paragraph, it talks about the facts before I suggest that NOSET did not understand the distinction between filing a claim with the CL and appealing the termination of default. That's not the end of... Oh, I'm sorry, if you turn the page in the next end of that paragraph is where confusion is used. That's not the end of the factual analysis. The following paragraph discusses what counsel did, the fact findings on that. And then towards the end of that big paragraph that starts with the record demonstrates, there is a sentence here in which the board says that given the involvement in counsel and the amount of research done, that the board finds it, quote, hard to believe that appellant was unaware of its appeal rights under the disputes clause, even if the termination letter did not include the language required by the FAR. So was there facts findings discussing confusion? Absolutely. But that wasn't the conclusion of the factual findings. The court must read on to feel, to find what the board actually does. Does our standard of review change in a situation where the adequacy of the notices is an inadequacy of the notices acknowledged by all parties? The fact that the notice was inadequate to begin with. And it seems to me your argument well, it doesn't matter down at the, but it does matter. I mean, this is in the regulations, correct? Oh, your honor, I want to be very clear that we're not arguing that any notification that is identical to the, that any notification can be missing language and then still is automatically adequate. We believe that this particular one is adequate on the language that's used within it. And that there's been no prejudice based on the facts that are in this record. So unless I'm misunderstanding your question, I just want to be clear, the government isn't asking for a blanket rule that says that, you know, any type of inadequacy is fine. We're not arguing that. So once the analysis begins with an inadequate notice, does the standard of review change for us? Well, if this court finds that it's inadequate, then what the court is looking for is prejudice. And the standard of review on that situation is most likely going to be factual because the court will be looking at the record itself. If you look at the Decker case, now, Decker didn't actually get into detrimental reliance because this court affirmed on alternative grounds, finding that determination for default was reasonable and not an abuse of discretion. But it talked about the Decker court, Decker to the board to make a finding in the first instance, whether there is detrimental reliance. And that is because a finding of detrimental reliance relies on fact findings. So it is a fact issue, Your Honor. So even if this court finds that the notice here was inaccurate, the issue becomes one of prejudice, just like the board found, and that is a fact issue. The standard of review. And what happens if the notice is not inadequate? If it meets all the requirements, then there is no other review. Correct. There's no need to get to prejudice, Your Honor. And I realize your time has just run out, but in this question of the board's assertion that there's some sort of right-blind irrelevance of any kind of evidence about post-February 15th, that's the 90-day period, communications, that seems unremarkable at that time. Well, I think it's based in logic, Your Honor. If you're trying to figure out what the party's understanding was before the deadline passed, how could it be actually irrelevant if they keep talking and those communications might well shine light on how to understand the earlier communications? Well, I'm going to pick on a word you used here, Your Honor, and that was keep talking. In the scenario that, hypothetically, you're posing to me, the conversation started before the deadline. Right. I represented government contractors. Can I ask you a question? I really am interested in the question Judge Toronto asked, but you're changing the hypothetical kind of ask, which is, you're talking about maybe the facts in this case, but setting the facts of this case aside, how would you answer that question? Is there really a bright-line rule that events that occur after the notice of the time period for the appeal are never relevant? They shouldn't be relevant. I mean, I can't tell this Court that there's never going to be a scenario where the facts that happen after the 90 days or one year for the Court of Federal Claims are not going to be relevant, but there's a big element of logic here, and this is why the Board does this. When I represented government contractors in my former career, if you're trying to figure out when the appeal deadline is, you have to make that decision before the 90 days. You can't make that decision on the 91st day, the 92nd day, and so on. So the information that's before you to make that decision must all pre-exist from that 90-day deadline. Now, I mean, an affidavit written on the 94th or 95th day describing a conversation that happened 20 days earlier, that's different, Your Honor. There could be scenarios where you're looking at information that's dated later than the 90 days, but if you are a government contracts counsel and you're trying to decide whether or not you need to appeal within this 90-day period, the evidence before you is only that time period. I hear what you're saying, but to have a bright-line rule that says you never look at the evidence that occurs after, that also seems nonsensical, even under the facts you gave. If it's highly unlikely that the evidence that's submitted afterward is going to be relevant, it should probably be considered anyway, just to make sure that's civil and make sure it's not one of those scenarios that you're talking about where it could be relevant. I mean, that's a different question. Okay. Can I ask you one more question? Can I just add something to that, Your Honor? And that's why we addressed all the evidence in our brief, even the evidence that was after the 90 days. I appreciate that. I wanted to ask you, you used the phrase technically defective earlier. Do you see technically defective as meaning something other than the other phrase that you used, which was inadequate? Well, something that's technically defective, it's kind of forgiving it for being defective, the way I'm saying it, that there is a purpose that it's set out to do. So I would say that adequate notice and technically defective are the same. Okay. Yeah. Is there any relevance to, is it, I think, the introductory clause of the FAR provision that says you're supposed to include something substantially like this? Well, I mean, that's important because if you leave one article out or one word out of it, you could have a contractor claiming it's not identical, right? So I automatically didn't get my notice rights. So that's why it says substantially. There has to be some sort of flexibility. But what's important in this case, and the reason why we're sitting here today, is because the notice didn't say 90 days in it. And that's the key part of what is missing. It seems to me you just gloss that over and not give it much significance. Right? Well, I mean, the fact that it's missing, no, I think it is significant. And that's why this court needs to go through the analysis that the first circuit did in Jayway. The exact same analysis. Follow the breadcrumbs, like I've talked to this court about today. So if the notice is technically deficient, we still go to the prejudice analysis. Yeah, you can still go to prejudice analysis. And I just want to use Decker as an example of a situation where you have a very different case where it is inadequate and problematic. And that's where in Decker, incorrect advice was provided in the termination notice. It said that you could go to the Court of Federal Claims in 12 months, but at that time, there was no jurisdiction to do so. So that would be a very different. Your Honor, yes. Completely separate topic. So you say in, I forget, a footnote of your brief, I think it's page 10, note four, that if the termination for default stands, then the various monetary claims will fall. Is that? Um, oh, I'm in the wrong brief. I apologize, Your Honor. That's the Licata Tool case, Your Honor. That is, that will be. That's what you cite. Yeah, and I will have to admit that I will not be arguing this case before the ASPCA. It will be the Army will have to move to dismiss on these grounds. But I recommended it to them. Licata Tools isn't a bright line. It is a test that comes along with that to determine whether or not the claims will stand following the... The reason it caught my eye, I guess, was this, that there was a communication between November 17th and February 15th. In particular, I think it was January 8th, in which the contracting officer said, Claim 1 is still alive and I can't decide it. And if it were true and maybe also very clear that the termination for default killed Claim 1, then there couldn't have been any bar to the Claim 1 is denied because the termination for default. And she didn't say that. Yes, that was not a ground for dismissal that was raised initially. It is something that we at DOJ have identified that would be a possibility and wanted to put that in a brief to be up front with this court about what might happen. Now, just a little note about the contracting officer's statement there. You'll notice from the first part of the ASPCA decision, the discussion of fraud and the contracting officer's belief that she was unable to make a decision on anything because of the way the bar is written. The regulation doesn't quite say that. It is a difficult combination of two different regulations. When I read it, it did not preclude a denial on a ground independent from default. That hasn't been resolved yet. The language just doesn't say that. That is good to hear, Your Honor. I'll put it that way. There is debate in the government about what a contracting officer can do because of the term when suspects fraud. And then there's another term that says there is fraud in two different FAR regulations. I apologize. I don't have this all in front of me today. This might be a conversation for a later date. It's an interesting FAR question, Your Honor. Okay. Thank you, Your Honors. We thank the parties for their arguments and we'll take this case into the